**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

SHELDON BERT LEARY,

Debtor.

SHELDON BERT LEARY,

Plaintiff,

v.

GREAT LAKES EDUCATIONAL LOAN SERVICES and U.S. DEPARTMENT OF EDUCATION

Defendants.[1]

**FOR PUBLICATION**

Case No. 15-11583 (MG)

Chapter 7

Adv. Proc. No. 15-01295 (MG)

**MEMORANDUM OPINION AND ORDER IMPOSING CIVIL CONTEMPT SANCTIONS ON GREAT LAKES EDUCATIONAL LOAN SERVICES**
**IN THE AMOUNT OF $378,629.62**

***A P P E A R A N C E S:***

SHELDON B. LEARY
*Pro se*

AUDREY STRAUSS
Acting United States Attorney
Southern District of New York
*Attorney for U.S. Department of Education*
86 Chambers Street, 3rd Floor
New York, NY 10007
By: Joshua E. Kahane, Esq.

[1] The caption has been amended to remove defendants Discover Student Loans, EDSI, Navient Educational Credit Management Corp., and Wells Fargo Educational Financial Services, against whom the action is no longer pending, and to add the U.S. Department of Education, which was added as a defendant in an amended complaint.

THE SENIAWSKI LAW FIRM PPLC
*Attorneys for Great Lakes Educational Loan Services*
1460 Broadway, FL 4
New York, NY 10036
By: Barbara L. Seniawski, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Too often student loan borrowers face nearly insurmountable hurdles in their efforts to pay back student loan debt. Borrowers' challenges stem, in part, from predatory tactics used by some loan servicers to collect on student loan debt and from the borrowers' lack of resources to prevent such abuse, particularly when the borrower does not have an attorney. The actions—or, more appropriately, inaction—of Great Lakes Educational Loan Services ("Great Lakes"), a named defendant in this adversary proceeding over the last five years, evidences just such abuse. As explained below, Great Lakes' behavior—failing to respond to the complaint, ignoring *multiple orders* entered by the Court ordering Great Lakes to appear at hearings, and failing to pay $123,625.52 in sanctions ordered by this Court on April 29, 2020—was, *at a minimum*, grossly negligent, but really much worse. The debtor-plaintiff, Sheldon Leary, the obligor on seven student loans that were serviced by Great Lakes on behalf of the U.S. Department of Education ("DOE") was directly and seriously harmed by Great Lakes' conduct. Until a hearing before this Court on August 31, 2020, DOE was demanding that Mr. Leary pay DOE a total of $416,877.56, for unpaid principal, accrued interest and collection costs. During the August 31, 2020 hearing, DOE's counsel said that DOE is now only seeking $354,629.62, having agreed to forego collection costs.

Over five years ago, Mr. Leary, acting *pro se*, filed a Chapter 7 bankruptcy case; he also filed an adversary complaint, again acting *pro* se, seeking to discharge substantial student loan

debt obtained from DOE and other student loan lenders.[2] Under five master promissory notes with the DOE, Mr. Leary borrowed nearly three hundred thousand dollars to pay for his three children's college tuitions. Mr. Leary's adversary proceeding named multiple defendants, including Great Lakes. Mr. Leary believed that Great Lakes, the DOE's loan servicer from whom he always received billing statements and other communications concerning the DOE loans, was the proper party to be named as a defendant in order to discharge the DOE student loans.[3] Therefore, Mr. Leary served the summons and complaint on Great Lakes. While it has taken nearly five years, Great Lakes and DOE both now concede that Mr. Leary properly served the complaint on Great Lakes in September 2015, and Great Lakes promptly forwarded a copy of the complaint to DOE in early October 2015. Great Lakes did *not* respond to the summons and complaint. When it received the complaint from Great Lakes, DOE forwarded the complaint to the U.S. Attorney's Office for the Southern District of New York, which concluded that since DOE was not a named defendant in the complaint, DOE did not need to respond to the complaint.

The Court's docket in this adversary proceeding shows that over the next five years multiple notices and orders in connection with the default judgment Mr. Leary obtained against Great Lakes in March 2016 discharging the student loan debt were simply ignored by Great Lakes. Four years after the default judgment was entered, Mr. Leary filed a motion for contempt, seeking to enforce the discharge injunction against the DOE and Great Lakes after the

---

[2] After the adversary proceeding was filed, Mr. Leary entered into settlements with the other lenders. The Court approved the settlements. After the adversary complaint was recently amended to add DOE as a defendant, only Great Lakes and DOE remain as defendants in this adversary proceeding.

[3] A review of the Master Promissory Notes signed by Mr. Leary shows multiple places in which Mr. Leary was directed to contact the loan servicer—in this case, Great Lakes—with respect to issues concerning many matters, including requests to defer payments under the loans. It is not surprising that Mr. Leary concluded that Great Lakes was the proper party to name as a defendant in seeking relief to discharge that debt.

DOE threatened to garnish Mr. Leary's wages for defaulting on the previously discharged debt. The Court reopened the case and entered several orders requiring Great Lakes, a named defendant in this case, to respond to the motion for contempt and appear at several case management conferences so that the Court could adjudicate the issues raised by the DOE's actions to collect the student loan debt from Mr. Leary. After repeated unsuccessful attempts to get Great Lakes to respond to this Court's scheduling orders, the Court entered an order to show cause why sanctions should not be imposed on Great Lakes. Great Lakes ignored that order as well, so the Court entered an order imposing sanctions on Great Lakes in the amount of $123,625.52 (explained below) payable to the Clerk of the Court within 14 days from the April 29, 2020 date of the order. Great Lakes' counsel acknowledges that Great Lakes was served with all of these orders, but it ignored the sanctions order as well. That blatant disregard of the Court's orders necessitated a second order to show cause why additional sanctions should not be imposed. The second order to show cause scheduled a hearing for August 31, 2020.

During the August 31, 2020 hearing on the second order to show cause to hold Great Lakes in contempt and impose sanctions, Great Lakes' counsel, who finally filed a notice of appearance in this adversary proceeding on August 13, 2020, *admitted that Great Lakes had in fact been served with multiple orders, all of which Great Lakes ignored until counsel filed a response on August 24, 2020 to the Second Order to Show Cause (as defined below).* The notice of appearance of Great Lakes' counsel only came about because DOE's counsel (the Office of the United States Attorney for the Southern District of New York) called Great Lakes and advised it of the scheduled hearing on the Second Order to Show Cause. Against this backdrop, Great Lakes unbelievably argues that its inaction over the last five years resulted from an "unintentional procedural error."

The Court finds this cavalier excuse wholly unsatisfactory. Great Lakes' indifference to this proceeding—in which it has been a named defendant since September 2015—seriously prejudiced Mr. Leary. To obtain a discharge of these student loan debts, Mr. Leary would have been required to show that, as of September 2015 when the complaint was filed, that his student loan debt would impose an "undue burden" on him under 11 U.S.C. § 523(a)(8). That is a difficult feat at any time, but nearly impossible now so many years later. Great Lakes' conduct highlights the exploitative tactics perpetrated by Great Lakes, seemingly with DOE's knowledge.[4] For the reasons explained below, the Court, therefore, orders Great Lakes to pay sanctions in the amount of $354,629.62 to DOE, in full satisfaction of the amount DOE contends it is owed by Mr. Leary. To be clear, the sanctions of $354,629.62 payable to DOE is in lieu of the sanctions of $123,625.52 that Great Lakes was previously ordered to pay to the Clerk of the Court. Additionally, however, the Court orders Great Lakes to pay $24,000 to Mr. Leary for the harm he suffered over the last five years as a result of negative credit ratings, aggravation, loss of sleep and worry, harassment, pain and suffering, in addition to contributing marital strain. ("Motion for Contempt," ECF Doc. # 38 at 5; "Second Motion to Amend," ECF Doc. # 74 at 5.) Finally, upon receiving payment from Great Lakes, DOE is required to report to all credit reporting agencies that all of Mr. Leary's student loan debt has been paid in full.

---

[4] Not only did Great Lakes send DOE a copy of the adversary complaint in October 2015, but servicing histories provided by Great Lakes under seal on September 3, 2020 show that Great Lakes sent DOE copies of fourteen other pleadings in connection with Mr. Leary's adversary proceeding *even though Great Lakes never appeared and defended the action*. DOE's counsel stated at the August 31, 2020 hearing that DOE did not inform him that Great Lakes sent DOE copies of other orders and pleadings after the summons and complaint was sent to DOE in October 2015. However, on September 4, 2020, DOE's counsel emailed a letter and records to the Court acknowledging for the first time that Great Lakes sent DOE numerous pleadings and emails after receiving the original complaint from Great Lakes. Because the Court resolves the Second Order to Show Cause by requiring Great Lakes to pay DOE as a sanction the full amount DOE claims is owed by Mr. Leary, it is unnecessary to resolve whether there is a basis separately to impose sanctions on DOE. The Court finds DOE's knowing indifference to Mr. Leary's plight, because of five years of misconduct by DOE's loan servicer, to be highly questionable. Even if DOE was not required to file pleadings in this case until it was named as defendant, it could have required Great Lakes to appear and argue that the relief requested in the complaint could only be granted if DOE was a defendant.

## I. BACKGROUND

### A. Mr. Leary's Complaint, the Summons and the Great Lakes' Default Judgment

On June 17, 2015, Mr. Leary filed a petition for relief under chapter 7 of the Bankruptcy Code. (Main Case, Case No. 15-11583-mg, ECF Doc. # 1.) In his Schedule F, "Creditors Holding Unsecured Nonpriority claims," Mr. Leary listed an unsecured claim owed to Great Lakes in the amount of $259,741. (Main Case, ECF Doc. # 11.) On August 28, 2015, Mr. Leary filed an adversary complaint against Discover Student Loans, EDSI, Great Lakes, Navient, and Wells Fargo Educational Financial Services ("Wells Fargo," and collectively, the "Defendants"), seeking a discharge of his student loan debt pursuant to section 523(a)(8) of the Bankruptcy Code because "undue hardship" would result if Mr. Leary had to repay the debt. ("Complaint," ECF Doc. # 1.) The Complaint alleged that Mr. Leary owed a debt to Great Lakes in the amount of $259,741. (Complaint at 7.) Mr. Leary did not reference any debt owed to the DOE or name the DOE as a defendant.

On September 2, 2015, this Court issued a *Summons and Notice of Pretrial Conference in Adversary Proceeding*. ("Summons," ECF Doc. # 2.) The Summons required Great Lakes (and the other Defendants) to submit a motion or answer to the Complaint within 30 days after the Summons was issued. (*See id.*) The Summons also scheduled a case management conference for October 14, 2015 at 10:00 a.m. (*See id.*) Mr. Leary's affidavit of service demonstrates he served Great Lakes with the Summons and Complaint on September 23, 2015 at P.O. Box 3059, Milwaukee, WI 53201- 3059, but Great Lakes did not file any response to the Complaint. ("Affidavit of Service," ECF Doc. # 54 at 11.) Defendants Wells Fargo, Navient, and Educational Credit Management Corporation ("ECMC") filed answers to Mr. Leary's Complaint. (ECF Doc. ## 3–5.) ECMC subsequently filed an amended answer. (ECF Doc. #

7.) Mr. Leary and Defendants Navient, Wells Fargo, and ECMC reached settlements, approved by the Court, to resolve their disputes. (ECF Doc. ## 28–30, 36.)

At the August 31, 2020 hearing, counsel to Great Lakes disclosed that Great Lakes kept servicing records reflecting that Great Lakes received the Summons and Complaint in September 2015 and subsequently forwarded it to the DOE in October 2015. The Court ordered counsel to Great Lakes and DOE to provide the Court with Mr. Leary's servicing histories under seal so that the Court could ascertain other filings DOE had notice of in this case. On September 3, 2020, Great Lakes' counsel emailed records to the Court, Mr. Leary and DOE's counsel copies of Mr. Leary's servicing histories, reflecting notes about Great Lakes' servicing of Mr. Leary's accounts. The servicing records reveal that Great Lakes forwarded to the DOE a total of fifteen pleadings in connection with Mr. Leary's case. On September 4, 2020, DOE's counsel emailed a letter and records to the Court, Mr. Leary and Great Lakes' counsel, acknowledging that DOE received from Great Lakes numerous pleadings and emails after receiving the original complaint from Great Lakes. (*See supra* n.4.)

On January 7, 2016, the Clerk of the Court entered a certificate of default against Discover Student Loans and Great Lakes. (ECF Doc. # 15.) On January 9, 2016, Great Lakes was served with the certificate of default by mail. (ECF Doc. # 16.) Great Lakes' servicing records show that Great Lakes received the certificate of default on January 15, 2016 and forwarded it to the DOE on that same day. On February 4, 2016, Great Lakes also received notice of a case management conference, which it also forwarded to the DOE. On February 8, 2016, Mr. Leary filed two motions for default judgments against Great Lakes and Discover Student Loans. ("Default Judgment Motions," ECF Doc. ## 22–23.) On February 8, 2016, Mr. Leary served Great Lakes with the Default Judgment Motions by certified mail. (*Id.*) Great

Lakes' servicing records show that Great Lakes received the Default Judgment Motions on February 22, 2016 and subsequently forwarded them to the DOE. On March 2, 2016, the Court granted Mr. Leary's Default Judgment Motions. (ECF Doc. ## 26–27.) The March 2, 2016 Judgment by Default Order against Great Lakes provides that "[t]he Plaintiff is discharged from the student loan debt held by Great Lakes." ("Great Lakes Judgment by Default," ECF Doc. # 26.) On March 10, 2016, it appears that the Great Lakes Judgment by Default was forwarded to the DOE. On April 15, 2016, May 31, 2016 August 1, 2016 and September 26, 2016, Great Lakes' servicing records show that Great Lakes monitored Mr. Leary's adversary proceeding to ascertain whether the bankruptcy case was still open. Four line items in the servicing notes state: "Per Pacer, Bankruptcy Case Is Still Open."

On November 28, 2016, Mr. Leary filed a Motion to Dismiss the Adversary Complaint and for an Order of Discharge. ("Motion to Dismiss," ECF Doc. # 33.) In response to this motion, on December 14, 2016, the Court entered a scheduling order that set a hearing on Mr. Leary's Motion to Dismiss for January 11, 2017, and required that "[D]efendants in the Adversary Proceeding shall file any response to the motion on or before 5:00 PM, on January 4, 2017." (ECF Doc. # 34.) The Court served Great Lakes with the scheduling order. (ECF Doc. # 35.) Great Lakes' servicing records show that Great Lakes received a copy of the order on January 5, 2017. When the Defendants, including Great Lakes, did not respond to the Scheduling Order by the response deadline on January 4, 2017, the Court dismissed the adversary proceeding, discharged Mr. Leary's debts and closed the adversary proceeding on January 5, 2017. Great Lakes' failure to respond to the scheduling order was just one more, among many, failures by Great Lakes to contest Mr. Leary's demand for discharge of the DOE student loan debt. On January 9, 2017, Mr. Leary's chapter 7 case was closed. (ECF Doc. # 37.)

On January 10, 2017, Great Lakes' servicing records show that it received a copy of the order dismissing Mr. Leary's case and discharging his student loan debt, and it forwarded that order to the DOE on the same day. Specifically, the servicing records state: "recd discharge of debtor, resume normal activity." On March 30, 2017, Great Lakes' servicing records show that someone at Great Lakes communicated with Mr. Leary about his student loans, and Mr. Leary informed them that his loans were discharged due to the bankruptcy. Between March 2017 and March 2020, Great Lakes' servicing records show that Great Lakes placed multiple calls and sent several emails to Mr. Leary in an effort to collect on his discharged loans.

**B. The DOE and Great Lakes' Inaction Upon Receiving Mr. Leary's Complaint**

Great Lakes and DOE concede that they each received copies of Mr. Leary's Complaint in September and October 2015, respectively. In fact, Great Lakes affirms—and its servicing records show that on September 25, 2015, its bankruptcy unit received Mr. Leary's Complaint at 2401 International Lane, Madison, Wisconsin 53704 (the address used by this Court to serve subsequent orders). ("Response," ECF Doc. # 82 at 5.) Great Lakes then forwarded the Complaint to DOE on October 5, 2015. (*Id.*) Great Lakes took no further action with respect to the Complaint that named Great Lakes as a defendant.

However, as early as November 2015, Great Lakes appears to have been monitoring the docket in this case on pacer. Great Lakes' servicing records show an entry stating "[p]er pacer, Bankruptcy & Adversary Case Still Open." Great Lakes' servicing records also show that Great Lakes "contacted borrower" on November 9, 2015 stating that they could not reach a settlement on his student loans because his accounts were in forbearance *due to bankruptcy*. Great Lakes also notes one instance where a document filed in this case was sent to Great Lakes' legal department. (Response at 5 (citing "Brownrigg Declaration," ECF Doc. # 82-1 ¶14).) That

document was the Stipulation and Consent Order Settling and Dismissing Adversary Proceeding as Against Educational Credit Management (ECF Doc. # 30). (Response at 5 (citing Brownrigg Declaration ¶ 14).) The case caption on that stipulation clearly names Great Lakes as a defendant in this case. Great Lakes' servicing notes show that they received the stipulation on September 7, 2016. The stipulation was "sent to legal" for "further review." Great Lakes now claims that it did not take any action because its bankruptcy unit did not realize that Great Lakes was a named party (although named in the caption, the body of the Complaint and on Mr. Leary's bankruptcy docket, which Great Lakes regularly monitored using pacer) and did not forward the documents to Great Lakes' own legal department. (Response at 6.)

After the DOE received notice of Mr. Leary's Complaint in October 2015, it referred the matter to the U.S. Attorney's Office for the Southern District of New York. ("DOE Status Letter," ECF Doc. # 72 at 1.) The U.S. Attorney's Office chose not to take any action because the DOE was not specifically named or served by Mr. Leary. (*Id*.) The Great Lakes' servicing histories reflect that, between October 2015 and January 2017, Great Lakes forwarded ten separate pleadings to the DOE in connection with Mr. Leary's adversary proceeding. Rather than intervene in the bankruptcy case because, it contends, the wrong party had been sued, the DOE waited to collect on Mr. Leary's debt until the automatic stay was lifted and it could return Mr. Leary's loans to normal servicing status.[5] (DOE Status Letter at 4.) The DOE Status Letter

[5] In connection with its recent Response to the Second Order to Show Cause, Great Lakes filed the Brownrigg Declaration. That declaration states that "[t]he DOE occasionally intervened in adversary proceedings seeking to discharge DOE loans if it was not named as a defendant by the debtor-plaintiff." (Brownrigg Declaration ¶ 12.) Indeed, DOE's intervention in other cases is shown by a number of reported decisions. *See, e.g., In re Chenault*, 586 B.R. 414, 418 (6th Cir. 2018). The DOE takes the position that DOE student loans can only be discharged as a result of an adversary proceeding in which it is named as a defendant, not where the loan servicer is named as a defendant. DOE was not named as a defendant here at the time the DOE student loans were discharged. DOE has not explained why it did not seek to intervene here, or at least assure that its loan servicer, Great Lakes, appeared and moved to dismiss by arguing that DOE student loans can only be discharged in cases in which DOE was a defendant. DOE took the position in letters to Mr. Leary that its student loans could not be discharged in an action against the loan servicer. (Motion for Contempt, Ex. A.) Mr. Leary has argued that the discharge he already

confirms that Mr. Leary borrowed $205,311 under four Direct Loan Master Promissory Notes and one Federal Family Education Loan Program Master Promissory Note with the DOE. (*Id.* at 2.) Mr. Leary defaulted on his loans in November 2017 and September 2018. (*Id*. at 4.) The DOE then sent Leary several notices regarding his account in February 2018 and December 2018. (*Id*.)

According to Great Lakes' Response, after Mr. Leary defaulted under the master promissory notes in 2018, the servicing of his accounts was transferred from Great Lakes to Debt Management and Collection Systems. (Response at 7.) Great Lakes no longer services Mr. Leary's student loan accounts. (*Id.*) The fact that Great Lakes is no longer servicing Mr. Leary's loans cannot absolve Great Lakes of its failure to respond to the Complaint naming it as a defendant (filed and served while Great Lakes was the loan servicer); or to respond to the subsequent Court orders that Great Lakes now acknowledges were served on it; or to pay the monetary sanctions it was ordered to pay. Great Lakes' counsel acknowledged during the August 31, 2020 hearing that Great Lakes was in fact served with at least four pleadings and orders in the adversary proceeding before 2018, when loan servicing was transferred, and with several additional pleadings and orders after 2018, none of which it responded to.

### C. The Court Reopened Mr. Leary's Case to Enforce the Automatic Stay Against the DOE

On January 2, 2020, Mr. Leary filed a motion for entry of an order reopening his adversary proceeding to enforce this Court's Great Lakes Judgment by Default, discharging Mr.

---

obtained may apply to DOE on an agency theory. Because the Court has imposed sanctions against Great Lakes, requiring among other things that it satisfy Mr. Leary's full debt to DOE, it is unnecessary for the Court to reach the agency theory or to determine whether it may impose sanctions on DOE. **It should not be lost on anyone, however, that DOE's inaction with respect to Mr. Leary—especially when DOE had knowledge at multiple steps along the way that Great Lakes was ignoring its obligations to Mr. Leary as a named defendant in the adversary proceeding—is disappointing to say the least.**

Leary from the student loan debt held by Defendant Great Lakes, and further requesting that this Court sanction Great Lakes and the DOE for contempt of the Great Lakes Judgment by Default because of two letters sent by the DOE threatening to garnish Mr. Leary wages. (*See generally* Motion for Contempt.) DOE and Great Lakes were both served by certified mail. (*Id.*) Annexed to the Motion for Contempt is the DOE's letter to Mr. Leary, stating that Great Lakes was the servicer of the DOE loans and that Mr. Leary's discharge of debt owed to Great Lakes is ineffective to discharge Mr. Leary's debt to DOE. (Motion, Ex. A.) As a result of the DOE's actions, Mr. Leary's credit rating was downgraded. (Motion for Contempt at 3, 5.) Neither DOE nor Great Lakes responded to the Motion for Contempt.

On January 23, 2020, this Court entered an order granting Mr. Leary's request to reopen his adversary proceeding. ("Order to Reopen," ECF Doc. # 40.) Great Lakes was served with the Order to Reopen by mail. (ECF Doc. # 42.) Pursuant to the Order to Reopen, all parties were required to respond to the Motion for Contempt by February 6, 2020. (*Id.*) ECMC and Navient were the only parties to file a response, stating that they took no position on the Motion. (ECF Doc. ## 43, 48.) Defendant Great Lakes, which was a party to the adversary proceeding and against which a default judgment was entered, did not respond to the Order to Reopen.

On February 18, 2020, this Court entered an *Order Scheduling Case Management Conference and Reimposing the Automatic Stay*. ("Scheduling Order," ECF Doc. # 45.) DOE and Great Lakes were served with the Scheduling Order by mail. (ECF Doc # 46.) The Scheduling Order also required Mr. Leary and Defendant Great Lakes to appear for a case management conference on March 5, 2020 at 11:00 a.m. to address issues raised by Mr. Leary's Motion for Contempt, including whether any sanctions should be entered against Great Lakes

and whether the Complaint should be amended to add the DOE as a Defendant. (*Id.*) The Scheduling Order provided that:

> If Great Lakes fails to appear at the hearing—by counsel, knowledgeable about the facts and circumstances of the services provided by Great Lakes to the [DOE] in connection with any of the loans identified in [the Scheduling Order], including, whether, and if so, when, Great Lakes gave any written or oral notice to the DOE of the pendency of Plaintiff's adversary proceeding—the Court will enter monetary sanctions against Great Lakes.

(*Id.*) The Court also urged the DOE to appear at the hearing, recognizing that it was not named as a party in Mr. Leary's adversary proceeding. (*Id.*)

On March 5, 2020, this Court held a case management conference in accordance with the Scheduling Order. Mr. Leary, *pro se*, appeared at the hearing, but neither Great Lakes nor DOE appeared. The Court indicated that it would reserve its decision on whether to sanction Great Lakes for its failure to appear and whether to order Mr. Leary to amend the Complaint to add the DOE as a defendant.[6]

**D. The First Order to Show Cause Against Great Lakes**

After Great Lakes failed to appear at the March 5, 2020 case management conference, the Court entered an *Order to Show Cause Why Great Lakes Educational Loan Services Should Not Be Sanctioned In the Amount Of $123,625.52 For Ignoring Court Orders, And Requiring Great Lakes To Appear At The Hearing Scheduled for April 27, 2020 at 11:00 A.M.* ("First Order to Show Cause," ECF Doc. # 55.) The First Order to Show Cause was served by mail on Great Lakes and on DOE's counsel, the U.S. Attorney's Office for the Southern District of New York. (ECF Doc. # 56.) The First Order to Show Cause provided that the Court would address whether to impose sanctions on Great Lakes in the amount of $123,625.52, a figure representative of

---

6 Great Lakes' servicing records show that Great Lakes forwarded five separate pleadings to the DOE in connection with Mr. Leary's adversary proceeding from March 5, 2020 to July 23, 2020.

accumulating collection costs and accruing interest Mr. Leary faced in connection with the student loans Great Lakes serviced. (*Id.* at 4–5.) Notice of the First Order to Show Cause was mailed to Great Lakes at four different addresses, taken from its website, since it had never appeared in the case despite the service of multiple orders: (1) 2401 International Lane, Madison, WI 53704; (2) PO Box 7860, Madison, WI 53707-7860; (3) PO Box 3059, Milwaukee, WI 53201-3059; (4) PO Box 530229, Atlanta, GA 30353-0229.[7] (*Id.* at 5.) On April 15, 2020 and May 12, 2020, the Court received a *Notice of Returned Mail to Court* showing that the First Order to Show Cause could not be delivered to Great Lakes' Milwaukee and Atlanta addresses. (ECF Doc. # 61.) The First Order to Show Cause, mailed to the Great Lakes' address in Madison, WI, was not returned as undelivered. During the August 31, 2020 hearing, Great Lakes' counsel acknowledged that Great Lakes received the order. Great Lakes' servicing records also show that Great Lakes received a document in this adversary proceeding on March 31, 2020, stating Great Lakes "to appear in court hearing."

Great Lakes did not comply with this Court's orders requiring Great Lakes to respond to the First Order to Show Cause by April 20, 2020, and it did not attend the hearing on April 27, 2020 at 11:00 a.m. At the April 27, 2020 hearing on the First Order to Show Cause, the Court stated that sufficient cause had been established to impose monetary sanctions on Great Lakes. On April 29, 2020, the Court entered an *Order Imposing Sanctions on Great Lakes Educational Loan Services In the Amount of $123,625.52 For Ignoring Multiple Court Orders*, specifically for Great Lakes' failure to respond to the First Order to Show Cause and appear at the April 27,

[7] Because Great Lakes had never responded to any pleadings or orders in this case, the Court could not be sure that Great Lakes received prior service copies (which it has now acknowledged that it did receive). The Court searched the internet for *any* addresses identified on Great Lakes' website and service was made on *all* of those addresses, some of which were returned to the Court as undelivered. But that still not result in an appearance by Great Lakes' counsel. It was only after DOE's counsel in the U.S. Attorney's Office recently contacted Great Lakes that it finally appeared by counsel in this case.

2020 case management conference. ("Sanctions Order," ECF Doc. # 60.) The Sanctions Order required Great Lakes to pay $123,625.52 to the Clerk of the Court within 14 days of the entry of the Sanctions Order. (*Id.* at 5.)

On April 29, 2020, the Clerk of the Court served copies of the Sanctions Order by mail on Great Lakes at the following addresses shown on its website and the internet: (1) 2401 International Lane, Madison, WI 53704; (2) PO Box 7860, Madison, WI 53707-7860; (3) PO Box 530229, Atlanta, GA 30353-0229. (ECF Doc. # 61.) The Sanctions Order was also served on DOE's counsel. (*Id.*). The Sanctions Order mailed to Great Lakes' Wisconsin addresses was not returned as undelivered. Great Lakes servicing records show that Great Lakes received the Sanctions Order on May 7, 2020, and the records state that Court Solutions would be used for the hearing on the order to show cause. Great Lakes forwarded the Sanctions Order to the DOE on that same day. In a familiar pattern of repeated stonewalling, Great Lakes did not comply with the Sanctions Order; it did not pay monetary sanctions in the amount of $123,625.52 to the Clerk of the Court.

**E. Mr. Leary Moves to Amend the Complaint**

At an April 27, 2020 case management conference, the Court addressed Mr. Leary's request to amend the above-captioned adversary proceeding to include the DOE as a defendant. ("First Motion to Amend," ECF Doc. # 54.) At the hearing, the Court ruled that it would not permit Mr. Leary to add the DOE as a defendant based on the First Motion to Amend pending before the Court without amending the allegations in the Complaint to allege the basis for a cause of action against DOE. The Court indicated that Mr. Leary must set forth, in a proposed amended complaint, sufficient allegations to state one or more causes of action against the DOE. Accordingly, the Court entered an order granting Mr. Leary authority to file a proposed amended

complaint. (ECF Doc. # 62.) The order also provided that the DOE could oppose granting leave to file the amended complaint, or consent to the filing of the amended complaint and move, answer or otherwise respond to the amended complaint within 30 days after the proposed amended complaint is filed. (*Id*.)

Mr. Leary filed a second motion to amend his complaint to add the DOE as a defendant. (Second Motion to Amend at 1.) Mr. Leary alleges that Great Lakes was the DOE's authorized agent. (*Id.* at 2.) Mr. Leary argues that the DOE's failure to answer or respond to the Complaint binds it to the Great Lakes Judgment by Default and to the discharge of his student loans. (*Id.*) Mr. Leary seeks (1) a finding that the Great Lakes Judgment by Default is also effective against the DOE, (2) an order for the DOE to cease and desist further attempts to collect his discharged debt, and (3) a damages award in the amount of $24,000 for the pain and suffering this process has caused or for a damages hearing to determine the loss caused by DOE and Great Lakes' abuse of the judicial process. (*Id.* at 5–6.) On July 16, 2020, rather than oppose Mr. Leary's request to amend his Complaint, the DOE filed an answer. ("Answer," ECF Doc. # 75.) Great Lakes' servicing notes reflect that they received a copy of the DOE's Answer on July 22, 2020 and subsequently forwarded that document to the DOE.

**F. The Second Order to Show Cause Against Great Lakes**

On August 10, 2020, this Court entered an *Order to Show Cause Why Great Lakes Educational Loan Services Should Not Be Further Sanctioned in The Amount Of $416,877.56 For Ignoring Multiple Court Orders, And Requiring Great Lakes to Appear at The Hearing Scheduled for August 31, 2020 at 10 A.M.* ("Second Order to Show Cause," ECF Doc. # 76.) The Court explained that the sanctions imposed on Great Lakes in the amount of $416,877.56 represent the total financial liability Mr. Leary faces in connection with his student loan debt

allegedly still owed to the DOE.[8] (*Id.* at 5–6.) The Second Order to Show Cause included the $123,625.52 in monetary sanctions imposed by the Sanctions Order, which Great Lakes did not pay.

The Court reiterated that:

> The Court is deeply troubled by Great Lakes' continued failure to prosecute this case over the last four and a half years and to respond to the Court's Order to Reopen and Scheduling Order. This inaction has resulted in a substantial burden on Plaintiff, who must now defend his case against Great Lakes and/or the DOE four years after he was discharged of his student loan debt in the Great Lakes Judgment by Default. In addition, Great Lakes' continued stonewalling has unfairly prejudiced Plaintiff by increasing his potential financial liability to Great Lakes and/or the DOE, who now seek to collect on the principal debt and its accruing interest and collection costs, including over the past four and a half years since the Complaint was filed. The DOE claims that Plaintiff has an unpaid balance in the amount of $409,613.69, including: $285,988.17 in unpaid principal, $61,377.58 in accrued interest, and $62,247.94 in collection costs as of November 12, 2019. (Motion, Ex. C.)

(*Id.* at 5–6.)

**G. Great Lakes' Response**

On August 24, 2020, Great Lakes responded to the Second Order to Show Cause after DOE's counsel, the U.S. Attorney's Office, alerted Great Lakes' legal department to the order. (Response at 4.) In support of the Great Lakes Response, Great Lakes filed the Brownrigg Declaration, dated August 20, 2020.

Great Lakes makes several excuses for its failure to respond to this Court's orders and Mr. Leary's Complaint. As detailed above, Great Lakes explained that its failure to respond to

---

[8] The Court noted in the Second Order to Show Cause that its monetary sanctions against Great Lakes are based on (1) a November 14, 2019 letter from the DOE to Mr. Leary, attached as Exhibit C to Mr. Leary's Motion for Contempt, and (2) the DOE Status Letter. In the November 2019 letter, the DOE claims that Mr. Leary has an unpaid balance in the amount of $409,613.69. However, the DOE Status Letter indicates that the total unpaid balance due on Mr. Leary's student loans is $354,629.62. The DOE Status Letter does not include collection costs in the amount of $62,247.94 that the DOE sought to recover from Mr. Leary in the November 2019 letter. The DOE Status Letter also claims that Mr. Leary owes an additional $7,263.87 in unpaid interest that were not reflected in the November 2019 letter. Therefore, the Court found that the total balance due on Mr. Leary's student loans was $416,877.56. (*See* Second Order to Show Cause at 6 n.1.)

the Summons and Complaint and court orders in 2015 resulted from certain procedural errors. With respect to the Court's orders issued in 2020, Great Lakes represents that, due to COVID-19, ordinary course mail handling was interrupted and a temporary mail intake team—which was not familiar with bankruptcy documents—processed incoming mail. (*Id.* at 6 (citing Brownrigg Declaration ¶ 11).) As a result, Brownrigg asserts, Great Lakes' legal department was unaware of this adversary proceeding, failed to respond, and failed to appear until alerted by DOE's counsel on August 10, 2020. (*Id.*) Great Lakes' counsel acknowledged that Brownrigg has no personal knowledge of what actually transpired within Great Lakes with respect to Mr. Leary's student loans. Rather, he has attempted to reconstruct what happened. His declaration also studiously avoids addressing the *many* other notices and orders that were served on Great Lakes that Great Lakes ignored, other than to forward copies to DOE which Great Lakes also ignored, but service of which were acknowledged during the August 31, 2020 hearing by Great Lakes' counsel. The servicing records provided by Great Lakes also demonstrate that Mr. Brownrigg hid the ball with respect to the extent to which Great Lakes: (1) proactively monitored Mr. Leary's bankruptcy docket over the last five years and (2) forwarded pleadings to DOE, and (3) communicated directly with Mr. Leary about this bankruptcy case and the order discharging his student loan debt.

Great Lakes' Response then discusses the legal bases for why it should not be sanctioned. First, Great Lakes argues that no sanctions should be imposed under section 105(a) of the Bankruptcy Code because its noncompliance with multiple court orders was not done in bad faith. (*Id.* at 6.) Second, Great Lakes states that its non-appearance has had no material impact on Mr. Leary's litigation costs or indebtedness to DOE because Great Lakes is an improper party to this action and never owned the debt. (*Id.*) If the Court decides to take a different approach,

Great Lakes contends that its liability should only be with respect to Mr. Leary's reasonable litigation costs. (*Id.*)

## II. DISCUSSION

The record in this case reveals a long history of Great Lakes' gross negligence (or worse) and blatant disregard for Mr. Leary, this Court and this Court's orders. Great Lakes' inaction over the last five years has made it impossible for Mr. Leary to prosecute his case and have finality over his student loan debt liability. Such conduct unquestionably warrants civil contempt sanctions. Therefore, the Court imposes a heavy compensatory sanction on Great Lakes to compensate Mr. Leary for the financial liability he now faces as a result of Great Lakes' stonewalling, and to coerce Great Lakes as a party to this case to finally comply with this Court's orders.

For the reasons set forth below, this Court sanctions Great Lakes in the amount of $354,629.62, directly payable to DOE in full satisfaction of the outstanding balance of Mr. Leary's DOE loans, and $24,000 payable to Mr. Leary as a result of five years of damages resulting from negative credit ratings, aggravation, loss of sleep and worry, harassment, pain and suffering, in addition to contributing marital strain. (Motion for Contempt at 5; Second Motion to Amend at 5.)

### A. The Court's Authority to Punish for Civil Contempt

Civil contempt is a failure to obey a court order issued for another party's benefit and such sanctions are coercive or remedial in nature. *See* Black's Law Dictionary 385 (10th ed. 2014); *see also Penfield Co. of Cal. v. SEC*, 330 U.S. 585, 590 (1947) (stating that in civil contempt, fine and imprisonment are employed "as coercive sanctions to compel the contemnor to do what the law made it his duty to do"); Wright & Miller, at § 2960 ("Those [contempts of

court] in which the ultimate object of the punishment is the enforcement of the rights and remedies of a litigant are civil contempts.").

"There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966). "[B]ankruptcy courts, like Article III courts, possess inherent sanctioning powers." *Markus v. Rozhkov*, 615 B.R. 679, 710 (S.D.N.Y. 2020) (internal quotation marks and citations omitted); *see also In re Sanchez*, 941 F.3d 625, 627 (2d Cir. 2019) ("[I]nherent sanctioning powers are not contingent on Article III, but rather are, as their name suggests, inherent in the nature of federal courts as institutions charged with judicial functions."); *In re MarketXT Holdings Corp.*, Adv. No. 05-01268 (ALG), 2006 WL 408317, at *1 (Bankr. S.D.N.Y. Jan. 27, 2006) ("It is well accepted, in light of the 2001 amendments to Rule 9020, that bankruptcy courts have power to enter civil contempt orders."); *In re World Parts, LLC*, 291 B.R. 248, 253 (Bankr. W.D.N.Y. 2003) ("Bankruptcy courts possess the power to impose sanctions for acts of civil contempt.") (citing *In re Chateaugay Corp.*, 920 F.2d 183, 187 (2d Cir. 1990)).

Courts have embraced the inherent contempt authority as a power "necessary to the exercise of all others." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994) ("Courts independently must be vested with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates, and . . . to preserve themselves and their officers from the approach and insults of pollution.") (internal quotation marks and citations omitted); *see also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980) (stating that contempt powers are "the most prominent" of the court's inherent powers "which a judge must have and exercise in protecting the due and orderly administration of justice and in maintaining the authority and dignity of the court"); *Sigety v. Abrams*, 632 F.2d 969, 976 (2d Cir.

1980) ("The power to fine and imprison for contempt, from the earliest history of jurisprudence, has been regarded as a necessary incident and attribute of a court, without which it could no more exist than without a judge") (internal quotation marks and citations omitted).

### B. The Court Sanctions Great Lakes in the Amount of $354,629.62 in Compensatory Damages and Coercive Sanctions Directly Payable to DOE and $24,000 Directly Payable to Mr. Leary

1. Great Lakes Is in Contempt of Court

The purpose of civil contempt is to "coerce the contemnor into future compliance with the court's order or to compensate the complainant for losses resulting from the contemnor's past noncompliance." *King v. Allied Vision, Ltd.*, 65 F.3d 1051, 1062 (2d Cir. 1995) (internal quotation marks and citations omitted); *see also Nat'l Org. for Women v. Terry*, 159 F.3d 86, 93 (2d Cir. 1998); *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996) (stating that sanctions for civil contempt serve two purposes: to coerce future compliance and to remedy any harm past noncompliance caused the other party). In determining an appropriate sanction, the court must ensure that the civil contempt sanction is "coercive" or "compensatory" and not "punitive." *Gucci Am. v. Bank of China*, 768 F.3d 122, 144 (2d Cir. 2014).

A party may be held in civil contempt for violating a court order when: "(1) the order the contemnor failed to comply with is clear and unambiguous; (2) the proof of non-compliance is clear and convincing; and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *See Gucci Am., Inc. v. Li*, No. 10-cv-4974, 2015 WL 7758872, at *1 (S.D.N.Y. Nov. 30, 2015) (internal quotation marks and citations omitted). "[S]anctions for civil contempt can be imposed without a finding of willfulness," provided that the violations were "substantial" and the contemnor has "fail[ed] to energetically police compliance." *Lavatec Laundry Tech. GmbH v. Voss Laundry Solutions*, No. 3:13-cv-00056 (SRU), 2018 WL 2426655,

at *10 (D. Conn. Jan. 9, 2018) (quoting *Manhattan Indus. v. Sweater Bee by Banff*, 885 F.2d 1, 5 (2d Cir. 1989)). Considering the record in this case over the last five years, Great Lakes' violations of multiple court orders at Mr. Leary's expense constitute contempt of court.

*a. The Court's Orders Are Clear and Unambiguous*

With respect to the first element, "clear and unambiguous" means that the clarity of the order must be such that it enables the enjoined party "to ascertain from the four corners of the order precisely what acts are forbidden." *Monsanto Co. v. Haskel Trading, Inc.*, 13 F. Supp. 2d 349, 363 (E.D.N.Y 1998) (internal quotation marks and citations omitted); *see also Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1351–52 (2d Cir. 1989) (internal quotation marks and citations omitted). A clear and unambiguous order "leaves no uncertainty in the minds of those to whom it is addressed, who must be able to ascertain from the four corners of the order precisely what acts are forbidden." *King*, 65 F.3d at 1058 (quotations and citations omitted).

The orders entered in this case requiring a response or action by Great Lakes span five years and are clear and unambiguous. In fact, Great Lakes does not dispute that the Court may award sanctions for its nonappearance and violation of court orders. (Response at 9.) Beginning in September 2015, Great Lakes was required to respond to Mr. Leary's Complaint and appear at a case management conference as a party to this case, pursuant to the Summons issued by this Court. (ECF Doc. ## 1–2.) When Great Lakes failed to appear or prosecute this case, and when it ignored Mr. Leary's Default Judgment Motions, the Court entered the Great Lakes Judgment by Default and discharged Mr. Leary's student debt. (ECF Doc. # 26.) Great Lakes thereafter continued to disregard court orders, failing to respond to Mr. Leary's Motion to Dismiss, as required by this Court's scheduling order. (ECF Doc. # 34.) After reopening the case this year, the Court issued several orders requiring Great Lakes to respond to Mr. Leary's Motion for

Contempt, appear for case management conferences, respond to two orders to show cause, and pay sanctions in the amount of $123,625.52. (ECF Doc. ## 40, 45, 55, 60, 76.) Those orders were clear and unambiguous.

*b. Great Lakes' Non-Compliance Is Clear and Convincing*

With respect to the second element, the party seeking a civil contempt sanction bears the burden of establishing the offense by clear and convincing evidence. *See Latino Officers Ass'n of City of N.Y., Inc. v. City of N.Y.*, 558 F.3d 159, 164 (2d Cir.2009). "The clear and convincing standard requires a quantum of proof adequate to demonstrate a 'reasonable certainty' that a violation occurred." *Yurman Studio, Inc. v. Castaneda*, Nos. 07 Civ. 1241(SAS), 07 Civ. 7862(SAS), 2009 WL 454275, at *2 (S.D.N.Y. Feb. 23, 2009) (internal quotation marks and citations omitted).

Great Lakes' counsel conceded at the August 31, 2020 hearing that Great Lakes did not comply with multiple court orders issued throughout the course of this case. In fact, even after appearing in this case, Great Lakes still has not paid the monetary fine due under the Sanctions Order. Great Lakes' assertion that it plans to seek to vacate the Sanctions Order in the future does not absolve it of its responsibility to comply with that order. (Response at 7.) Frankly, in light of the seriousness of Great Lakes' misconduct, moving at some point in the future to vacate the Sanctions Order, which it now acknowledges was served on Great Lakes on April 29, 2020, is nothing but a further stalling tactic that is "too little, too late." The Court finds that Great Lakes' noncompliance with multiple court orders has therefore been shown by clear and convincing evidence.

*c. Great Lakes Has Not Made a Diligent Attempt to Comply*

Regarding the third element, "reasonable diligence requires a party to develop and execute reasonable effective methods of compliance." *Yurman Studio, Inc.*, 2009 WL 454275, at *2 (internal quotation marks and citations omitted). "Although the Second Circuit has not been squarely confronted with the question of what constitutes 'reasonable diligence,' it has noted that 'substantial compliance' is the appropriate standard in evaluating noncompliance in a contempt case." *Id.* To show a diligent attempt at compliance so as to negate the third element, a defendant must demonstrate that compliance was "factually impossible." *Badgley v. Santacroce*, 800 F.2d 33, 36–37 (2d Cir. 1986) (quoting *United States v. Rylander*, 460 U.S. 752, 757 (1983)).

The Court finds that Great Lakes did not make a reasonably diligent effort to comply with this Court's orders and Great Lakes' non-compliance amounts, *at a minimum*, to gross negligence. The record establishes that in 2015, Great Lakes' bankruptcy unit was served with a copy of the Summons and Complaint, and in 2016, its legal department received a copy of a document filed in this case naming Great Lakes as a defendant. Great Lakes was also served on several other occasions with multiple other documents filed in this case, including Mr. Leary's Default Judgment Motions, Motion to Dismiss the case, and the Court's scheduling order on Mr. Leary's Motion to Dismiss. Notwithstanding those facts, Great Lakes made no efforts to prosecute this case. Instead, the servicing records demonstrate that Great Lakes sat by, regularly monitoring Mr. Leary's bankruptcy docket until his case was closed and Great Lakes could return his student loans to normal servicing status. The servicing notes also show communications between Great Lakes and Mr. Leary where Mr. Leary explained that his loans were discharged in this bankruptcy proceeding. Nevertheless, Great Lakes unbelievably justifies

its inaction in 2015 and 2016 by stating that its bankruptcy unit and *legal department* did not realize Great Lakes was named as a party in this case, even though they were properly served with the Summons and Complaint, received the filings that named Great Lakes as a defendant in the caption and the body of the Complaint and routinely monitored pacer (which shows that Great Lakes is a defendant in this action).

After this Court reopened the case this year to adjudicate Mr. Leary's student loan debt, the Court served Great Lakes with multiple orders to respond or appear, two orders to show cause, and one order to pay sanctions. None of which Great Lakes responded to. Great Lakes justifies its inaction by arguing that the Covid-19 pandemic resulted in changes to its mail intake. (Response at 6.) The Court also rejects this excuse because the first order entered this year requiring a response by Great Lakes was filed on January 23, 2020. (ECF Doc. # 41.) The Court ordered Great Lakes to respond to the Motion for Contempt by February 6, 2020—before the Covid-19 pandemic altered life in the United States. This excuse is also belied by the fact that Great Lakes' own servicing notes contain an entry from March 31, 2020 stating Great Lakes was required "to in court hearing" on the First Order to Show Cause, suggesting that it did have knowledge of this Court's order.

The excuses cited by Great Lakes are not clear, plain and unmistakable evidence that Great Lakes' compliance with multiple court orders was impossible. Instead, the Court finds that Great Lakes has made no effort—much less a reasonable or diligent one—to comply with its obligations as a named party in this case.

At the August 31, 2020 hearing and in its Response, Great Lakes relied on *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d. Cir. 1986) to support its position that sanctions are not

warranted because Great Lakes did not act willfully or in bad faith.[9] (Response at 9.) That decision is unavailing to Great Lakes. There, the Second Circuit considered the district court's authority to award attorney's fees as sanctions under a bad faith exception to the "American Rule"—a rule requiring litigants to bear their own litigation expenses. The court found that the exception permitted the district court to award attorneys' fees in circumstances beyond bad faith, such as where there is "clear evidence that the challenged actions are entirely without color, and are taken for reasons of harassment or delay or for other improper purposes." *Id.* at 1272 (internal quotation marks and citations omitted). Because *Oliveri* addressed the limited circumstance where a court-imposed attorney's fees under the bad faith exception to the American Rule, that decision does not limit this Court's authority to impose civil contempt sanctions where the sanctions are remedial in nature and the contemnor's actions were not willful.

Instead, contrary to Great Lakes' argument, several decisions by courts in this Circuit support the conclusion that the Court does not need to find that Great Lakes' violation of the foregoing orders was willful before imposing contempt sanctions. *See Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Tech., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) (finding that to hold a party in civil contempt for failure to comply with a court order, "[i]t need not be established that the violation was willful"); *Manhattan Indus., Inc.*, 885 F.2d at 5 ("That [contemnor's] conduct may not have been willful does not preclude such an award, since sanctions for civil contempt can be imposed without a finding of willfulness") (internal quotation marks and citations omitted). In *Al Hirschfeld Foundation v. Margo Feiden Galleries Ltd.*, 438

---

[9] The Response also argues that sanctions are not warranted under section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9020-1(b). The Court will not further address the merits of this argument for the purposes of this Opinion and Order because the authority for the sanctions imposed by this Court's Opinion and Order stem from the Court's inherent authority to impose civil contempt sanctions.

F. Supp. 3d 203, 207 (S.D.N.Y. 2020), the court held that "the fact that the prohibited act was done inadvertently or in good faith . . . does not preclude a citation for civil contempt, for the sanction is remedial in nature." *Id.* at 207 (quoting *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 128 n.2 (2d Cir. 1979)). Therefore, the Court rejects Great Lakes' argument that a finding of bad faith or willfulness is required to impose civil contempt sanctions. Great Lakes' repeated disregard for multiple court orders is a sufficient basis to hold Great Lakes in contempt of court.

2. The Court Imposes $354,629.62 in Contempt Sanctions Payable to DOE and $24,000 in Contempt Sanctions Payable to Mr. Leary for Damages to Mr. Leary as a Result of Great Lakes' Contempt

Upon a finding of civil contempt, a court may impose judicial sanctions "as a remedial measure to compensate a civil complainant." *In re Grand Jury Witness*, 835 F.2d 437, 441 (2d Cir.1987); *see also Atl. Recording Corp. v. BCD Music Grp., Inc*., No. 08 Civ. 5201(WHP), 2009 WL 1390848, at *9 (S.D.N.Y. May 7, 2009). The Court has "broad discretion to fashion an appropriate coercive remedy . . . based on the nature of the harm and the probable effect of alternative sanctions." *EEOC v. Local 28 Sheet Metal Workers Int'l Ass'n*, 247 F.3d 333, 336 (2d Cir. 2001) (internal quotation marks and citations omitted). As discussed below, the Court imposes $354,629.62 in monetary sanctions payable to DOE in full satisfaction of Mr. Leary's debt to DOE, and $24,000 in monetary sanctions payable to Mr. Leary, both for the harm inflicted by Great Lakes on Mr. Leary.

*a. Compensable Sanctions*

Where the purpose of a court's sanctions is to compensate the complainant for losses sustained, some proof of loss must be present to justify its compensatory aspects. *See Terry*, 886 F.2d at 1353–54 (absent proof of loss, fine is payable to court); *United Mine Workers of*

*America*, 330 U.S. at 304 ("Where compensation is intended, a fine is imposed, payable to the complainant."). To prove compensatory damages, the moving party must demonstrate a "causal connection" between the contemnor's contemptuous behavior and the alleged damages. *Leadsinger, Inc. v. Cole*, No. 05-CV-5606 (HBP), 2006 WL 2266312, at *17 (S.D.N.Y. Aug. 4, 2006). However, a monetary sanction "is not always dependent on a demonstration of actual pecuniary loss." *Trustees of Conn. Pipe Trades Local 777 Health Fund v. Plumbing Creations, LLC*, No. 3:15-cv-00822 (MPS), 2019 WL 3051293, at *3 (D. Conn. July 11, 2019) (internal quotation marks and citations omitted).

Great Lakes' indifference to this proceeding caused Mr. Leary to operate under the reasonable assumption that he could emerge from bankruptcy with a clean slate and discharged debt. In that regard, Mr. Leary relied on Great Lakes' admission to the well pleaded allegations in his Complaint. *See* FED. R. CIV. P. 8(b)(6) (made applicable to this adversary proceeding pursuant to Bankruptcy Rule 7008) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). Mr. Leary's allegations in the Complaint that he borrowed $259,741 from Great Lakes to pay his student loan debt are deemed admitted by Great Lakes' failure to respond. (Complaint at 7; *see also CIT Bank, N.A. v. Tineo*, 17-cv-5119, 2019 WL 6828360, at *3 (E.D.N.Y. Dec. 5, 2019) (holding that plaintiff's allegations are deemed true for the purposes of summary judgment because, pursuant to Civil Rule 8(b)(6), defendant did not deny that he was the original obligor of the loan, that he has defaulted on that obligation, or that the bank provided timely notice of the default).)

Mr. Leary relied on Great Lakes' admission, the Great Lakes Judgment by Default and the Court's order dismissing this case as a basis to believe that Great Lakes was the correct

defendant in this case, that Great Lakes held his student loans, and that his student loan debt was discharged. Neither the DOE nor Great Lakes made any efforts to dispute that allegation in this Court. Instead, Great Lakes regularly monitored Mr. Leary's bankruptcy docket, waiting to return Mr. Leary's loans to normal servicing status. The Court concludes that it should not "unwind the clock"—as if that could easily be done—by more than five years since Great Lakes was served with the Adversary Complaint seeking to discharge the DOE student loans because of undue hardship under section 523(a)(8) of the Bankruptcy Code. Great Lakes seemingly believed it could ignore with impunity the *pro se* complaint filed by a Chapter 7 debtor. It can't and it must pay the price now for doing so.

Great Lakes inexplicably argues that Mr. Leary has not suffered any monetary loss due to Great Lakes' failure to respond to this Court's orders because Mr. Leary is *pro se* and did not incur attorney's fees. (Response at 9, 11.) But compensable sanctions against Great Lakes are not limited to attorney's fees. It must compensate Mr. Leary and DOE for the cumulative harm it caused through its five years of stonewalling. Those damages include the unpaid balance of the DOE student loans that Mr. Leary sought to discharge in his adversary proceeding, as well as the other damages he suffered personally.[10]

---

[10] While it is unnecessary to the decision imposing sanctions on Great Lakes, it is arguable that DOE should also be liable for sanctions based on Great Lakes' gross negligence because of their relationship as principal and agent. *See Reynolds v. Xerox Educ. Servs., Inc*., No. 6:13–CV–1223 (LEK/TWD), 2014 WL 4437622, at *7 (N.D.N.Y. Sept. 9, 2014) (finding that plaintiffs sufficiently pleaded a principal/agency relationship between student loan lender and student loan servicer) (citing *Warden v. PHH Mortg. Corp*., No. 10–CV–75, 2010 WL 3720128, at *4–5 (N.D. W. Va. Sept. 16, 2010) (finding that plaintiffs sufficiently pleaded principal/agent relationship between co-defendants based on allegation that co-defendants were servicer and owner of loan, respectively)*; In re Residential Capital, LLC*, No. 12–12020, 2014 WL 1410310, at *3 (Bankr. S.D.N.Y. Apr.14, 2014) (stating that "loan servicers typically are authorized to act as the agent for the owner of the note").) The DOE is now a defendant in this action, subject to both a determination that its debt should be discharged, and for the imposition of sanctions for misconduct. The Court's remedy for Great Lakes' disregard for multiple court orders—and the resulting financial burden that Great Lakes' conduct inflicted on Mr. Leary—is to require Great Lakes to compensate Mr. Leary for the debt he owes to DOE by paying $354,629.62 to DOE, the outstanding balance of the DOE loans, and $24,000 payable to Mr. Leary for the direct injury to Mr. Leary, both sanctions directly attributable to Great Lakes' misconduct. It is therefore unnecessary to reach the legal issues that might arise in separately imposing sanctions on DOE at this stage of the case.

*b. Coercive Sanctions*

Sanctioning Great Lakes in the amount of $378,629.62 is also intended to induce Great Lakes to comply with this Court's orders. When imposing coercive sanctions, this Court considers several factors in calculating a fine, including the character and magnitude of the harm threatened by continued contumacy, the probable effectiveness of any suggested sanction in bringing about compliance, and the contemnor's ability to pay. *See Weston Capital Advisors, Inc. v. PT Bank Mutiara, Tbk*, 738 F. App'x 19, 22 (2d Cir. 2018).

To date, Great Lakes has evaded this Court's orders and its obligation to prosecute this case as a defendant in this adversary proceeding. Great Lakes' continued contempt of multiple court orders is significant and rendered Mr. Leary's efforts to discharge his student loan debt nearly impossible. After this Court reopened Mr. Leary's case to enforce the automatic stay, the Court made several attempts to compel Great Lakes' appearance in this case. The Court issued: the Order to Reopen, requiring Great Lakes to respond to Mr. Leary's Motion for Contempt, multiple orders requiring Great Lakes to appear at case management conferences before the Court, and finally, the First Order to Show Cause necessitating a response from Great Lakes. After radio silence from Great Lakes for nearly seven months, the Court issued a Sanctions Order to coerce Great Lakes' compliance with the foregoing orders. To date, Great Lakes has not paid the $123,625.52 in sanctions imposed by the Sanctions Order and its Response suggests that it does not intend to do so because it plans to seek to vacate that order. (Response at 7.)

This fine is consistent with other decisions imposing hundreds of thousands of dollars in monetary sanctions for contemnors' violations of multiple court orders and misconduct. *See Calvillo Manriquez v. Devos*, 411 F. Supp. 3d 535 (N.D. Cal. 2019) (imposing sanctions of $100,000 on the DOE for failing to comply with a preliminary injunction enjoining DOE from

collecting on student borrowers' loans under the "Average Earnings Rule"); *see also In re Moon*, 613 B.R. 317 (Bankr. D. Nev. 2020) (imposing $100,000 in compensatory sanctions on creditor for violations of the automatic stay and resulting emotional distress damages suffered by chapter 13 debtor); *Gucci Am.,* 2015 WL 7758872, at *3 (imposing sanctions of $50,000 per day on contemnor for failure to adhere to multiple court orders); *Lavatec Laundry Tech. GmbH*, 2018 WL 2426655, at *18 (imposing sanctions of $1,001,018.75 on contemnor for attorneys' fees and costs); *Manhattan Indus., Inc.*, 885 F.2d at 9 (imposing $147,199 plus interest on contemnor for failure to adhere to multiple court orders).

Accordingly, the Court imposes $354,629.62 in sanctions on Great Lakes for its civil contempt payable directly to DOE, and $24,000 payable to Mr. Leary,[11] both payable within fourteen (14) days from the date of entry of this Opinion and Order.

## III. CONCLUSION

For the reasons explained above, the Court holds Great Lakes in civil contempt. To compensate Mr. Leary for the harm caused by Great Lakes' violations of multiple court orders, the Court orders Great Lakes to pay DOE $354,629.62 and $24,000 to Mr. Leary. Great Lakes is required to pay these sanctions withing fourteen (14) days from the date of the entry of this Opinion and Order. Great Lakes' counsel shall file a sworn declaration on the docket of this case by that date, attesting that these payments have been made.

Additionally, upon receiving payment from Great Lakes, DOE is required to report to all credit reporting agencies that all of Mr. Leary's student loan debt has been paid in full. DOE's

[11] The $24,000 that Mr. Leary asked for damages to him as a result of aggravation, pain and suffering, negative credit ratings, loss of sleep, worry and marital strain is a more modest sum than could well result from an evidentiary hearing. Since Mr. Leary limited his request to that amount, the Court will limit the award to that amount. If Great Lakes wants to contest the amount of that award, the Court will schedule an evidentiary hearing limited solely to damages for those items. During Mr. Leary's multiple appearances before the Court over the last five years, none of which Great Lakes attended other than the August 31, 2020 hearing, the Court has become very mindful of the difficulties and stress Mr. Leary has faced while Great Lakes ignored all.

counsel shall file a sworn declaration on the docket of this case, attesting that DOE has reported to all credit reporting agencies that Mr. Leary's DOE student loan debt has been paid in full.

After the sanctions are satisfied in full, this adversary proceeding, and the chapter 7 case, will be closed again.

The Court reserves jurisdiction in this matter to enter any additional orders that may be necessary and to impose additional sanctions on any of the defendants if they fail to timely comply with this Order.

**IT IS SO ORDERED.**

Dated: September 8, 2020
New York, New York

_____*Martin Glenn*____________
MARTIN GLENN
United States Bankruptcy Judge